IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KATHY DUMM, et al., | ) |
| Plaintiffs, | ) ) ) |
| v. | ) No. 3:12-01028 ) Senior Judge Haynes ) |
| RUTHERFORD COUNTY, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiffs, Cathy Dumm and Jane Zumbro, filed this action under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000e et seq., and 42 U.S.C. § 1983 against the Defendants Rutherford County Tennessee, Bill Boner, Rutherford County's Property Assessor, and Ray Duggin, a supervisor in the Rutherford County Property Assessor's Office. Plaintiffs, former employees of the Rutherford County Property Assessor's Office, allege sexual discrimination and retaliation by the defendant Boner and also allege that the Defendant Duggin, their supervisor, acquiesced or failed to take remedial measures to stop Boner's sexually harassing conduct. Plaintiffs also assert state law claims under the Tennessee Human Rights Act, Tennessee Code Annotated Section 4-21-401 et seq., as well as state common law claims of intentional infliction of emotional distress and outrageous conduct.

Before the Court is the Defendants' motion for partial summary judgment (Docket Entry No. 36), contending, in essence, that Plaintiffs' Title VII claims against the individual defendants fail as a matter of law and that Plaintiffs' proof fails to meet the standards for their state law claims for intentional infliction of emotional distress and outrageous conduct. In response, Plaintiffs concede

that the individual defendants are not liable for their Title VII claims, but argue that their proof of Defendant Boner's sexual comments and their inferences about the Defendant Boner's conduct are sufficient for a judgment on the Plaintiffs' state law claims.

## A. Review of the Record[1]

Plaintiffs were employed at the Rutherford County Property Assessor's Office with Dumm being hired in April 1995 and Zumbro in July 2006. Plaintiffs were terminated on November 2, 2011. According to the Plaintiffs' proof, Defendant Boner commenced his term as a Rutherford County Property Assessor in August 2008, and Defendant Duggin had worked for the Assessor's Office since 2007.

As to the Plaintiffs' termination on November 2, 2011, Plaintiffs contend that their terminations were caused by their complaints about Defendant Boner's inappropriate sexual conduct in the Assesor's office that Plaintiffs contend created a hostile work environment at the Assessor's Office. The Defendants' proof is that the Plaintiffs were terminated for excessive gossiping on the job that continued even after they were warned and separated. Plaintiffs' offices had to be separated to stop the gossiping that, Defendants contend, interfered with the work of the Assessor's Office.

For the purposes of this motion, the specifics of the Plaintiffs' claims are that Boner engaged in constant discussions of his unhappy marriage that he described as the worst mistake in his life. According to the Plaintiffs, Defendant Boner singled out Dumm, whom Plaintiffs describe as having

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court concludes that material factual disputes exist, and this section does not constitute a findings of fact.

2

the same name and hair color as the mother of Boner's daughter. (Docket Entry No. 39, Memorandum at 2, citing Dumm Deposition at p. 37). Plaintiffs infer that Boner "implied that he had the same feelings for Ms. Dumm." Id. (citing Dumm Deposition at p. 36). Boner is also cited as commenting on a client's and a family member's breasts and whether the clients had plastic surgery. Id. (citing Dumm Deposition at p. 50). According to Dumm, Boner frequented her work area that she asserts was to stare at her and look down her blouse. Id. (citing Dumm Deposition at p. 40 and Zumbro Deposition at p. 96). According to Dumm, when she asked Boner what he wanted, Boner replied, "You know what I want." Id. (citing Zumbro Deposition at p. 102). Boner would then state, "I got to get out of here," that Plaintiffs assert "suggest that he had an erection." Id. (citing Dumm Deposition at p. 59). Zumbro asserts that she observed Boner "pull[] a chair up to Ms. Dumm and squeeze his legs together" that Zumbro states was "to control his erection." Id. (citing Zumbro Depostion at p. 96). According to Dumm, Boner gave her his cell number and stated he was disappointed when Dumm had not called him. Id. (citing Dumm Deposition at p. 62).

According to Dumm, Boner would approach her in the presence of other employees that Dumm considered was "with the intention of rubbing against her breasts." Id. at 3 (citing Dumm Deposition at p. 43). Dumm asserts that she endured these incidents because she was afraid of being terminated, id. (citing Dumm Deposition at p. 47; Zumbro Deposition at p. 102) and, because Boner did not like smoking, Dumm gave up smoking to avoid termination. Id. (citing Dumm Deposition at p. 77). Dumm describes Boner's insistence on hugging her, and Boner would squeeze Dumm so as to press her breasts against him. Id. (citing Dumm Deposition at p. 53). On one occasion, Dumm states that Boner "bumped" his genitals against her arm in Duggin's presence, and when Dumm adjusted her arm to avoid the contact, Boner moved to continue the inappropriate conduct. Id. (citing

3

Dumm Deposition at p. 46). Dumm states that she then stood and left the work area to avoid any further contact. Id. Dumm cites one Boner comment about her posterior that Dumm states caused her to gain weight to make herself less attractive. Id. (citing Dumm Deposition at p.73). Dumm also wore unattractive clothes to stop Boner's approaches. Id. (citing Dumm Deposition at p. 80).

As to sexual comments, Dumm asserts that Boner called her an "asshole" in Zumbro's presence and that Boner told Plaintiffs that he was considering placing a port-a-potty in their office because the Plaintiffs went to the bathroom so much. Id. (citing Boner Deposition at pp. 87-88). According to Plaintiffs, on September 21, 2011, they met with Duggin about Boner's statements to female employees, including the port-a-potty statement. Id. at 4 (citing Duggin Deposition pp. 23, 29-30). Duggin asked Dumm if she would like to file a complaint. Id. The next day, at another meeting with Plaintiffs, Duggin, Marty, Francis, a supervisor, Oxsher, a supervisor, Blythe and Boner, Zumbro voiced her complaints about Boner's statements. According to Francis and Zumbro, Boner responded that for him to be more comfortable he would move Zumbro to another work station that was away from Dumm. Id. at 4 (citing Francis Deposition at p. 42; Zumbro Deposition at p. 100). Dumm was asked to give Duggin any information about Zumbro's complaint, but Dumm also expressed her concerns about Boner's conduct. Id. (citing Dumm Deposition at pp. 107, 133-34).

### B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as

4

the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be

granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

> It is likewise true that:
> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the

7

hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Although the parties argued extensively, the Court will consider only those specific grounds raised in the Defendant's motion for partial summary judgment. Of those contentions, as a matter of law, there is no individual liability for the individual defendants under Title VII. Wathen v. General Elec. Co., 115 F.3d, 400, 405 (6th Cir. 1997).

As to the Plaintiffs' state law claim for intentional infliction of emotional distress, Plaintiff must prove that the Defendants' conduct was intentional or reckless, so outrageous as to be intolerable in a civilized society, and that the Defendants' conduct resulted in a serious mental injury to the Plaintiff. Lourcey v. Estate of Scarlett, 146 S.W.3d 48, 51 (Tenn. 2004). The outrageousness requirement is described as an "exacting standard." Miller v. Willbanks, 8 S.W.3d 607, 614 (Tenn. 1999). Excluded from this exacting standard are "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." Bain v. Wells, 936 SW2d 618, 622 (Tenn. 1997). As to the mental injury requirement, the Tennessee Supreme Court later explained that "a causation requirement is implicit in the third element which necessitates that the misconduct 'result in serious mental injury.'" Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 31 (Tenn. 2005).

Under Tennessee law, the standard for intentional infliction of emotional distress applies to outrageous conduct. Rogers v. Louisville Land Co., 367 S.W.3d 196, 204-05 (Tenn. 2012).

From the Court's review of the record, Plaintiffs' proof is legally insufficient for their state common law claims. Compare Steele v. Superior Home Health Care, No. 03A01-9709-CH-00395, 1998 WL 783348, at *1-3 (Tenn. App. Nov. 10, 1998) (plaintiff's supervisor touched her knees, engaged Plaintiff in sexual conversations, made comments about the Plaintiff's sexual life, and sought to engage in sexual acts with her that culminated in a forcible rape) with Briordy v. Chloe Foods Corp., No. 3:07-0295, 2008 WL 587503, at *1-3, 10 (M.D. Tenn. February 29, 2008) (where supervisor grabbed and held the plaintiff around her waist and kissed the plaintiff and was described as "constantly aggressive about having a sexual relationship" was insufficient for intentional infliction of emotional distress claim).

There is not any proof that either Plaintiff sought any counseling or medical assistance of any kind, and they do not assert they were unable to perform their duties. Considering the requirement of Tennessee law, the Court concludes that Plaintiffs have not presented sufficient proof for their intentional infliction of emotional distress and outrageous conduct claims as required by Tennessee courts.

For these reasons, the Defendants' motion for partial summary judgment should be granted. An appropriate Order is filed herewith.

**ENTERED** this the 30th day of March, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

KATHY DUMM, et al., )
)
    Plaintiffs, )
)
v. ) No. 3:12-01028
) Senior Judge Haynes
)
RUTHERFORD COUNTY, et al., )
)
    Defendants. )

# ORDER

In accordance with the Memorandum filed herewith, Defendants' motion for partial summary judgment (Docket Entry No. 36) is **GRANTED**. Plaintiffs' Title VII claims against Defendants Bill Boner and Ray Duggin, as well as Plaintiffs' state common law claims for intentional infliction of emotional distress and outrageous conduct, are **DISMISSED with prejudice**.

It is so **ORDERED**.

ENTERED this the ___ day of March, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge